## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| RODNEY PRICE, | |
|    Plaintiff, | Civil Action No.: |
| v. | |
| SAFELITE SOLUTIONS, LLC, | **JURY TRIAL DEMANDED** |
|    Defendant. | |

## COMPLAINT FOR DAMAGES

Plaintiff Rodney Price ("Price" or "Plaintiff") files this Complaint for Damages against Defendant Safelite Solutions, LLC ("Safelite" or "Defendant"), showing the Court as follows:

### JURISDICTION AND VENUE

1. Price bring claims pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA").

2. Price invokes the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331 (federal question) and 28 U.S.C. §1343 (civil rights).

3. The unlawful employment practices alleged in this Complaint were committed within the Gainesville Division of this District. In accord with 28 U.S.C. § 1391, venue is appropriate in this Court.

## THE PARTIES

4. Price is an adult citizen of the United States who resides in Braselton, Georgia in Hall County and submits himself to the jurisdiction of this Court. Price worked for Safelite in this District from 2013 until Safelite terminated his employment September 1, 2020.

5. Safelite is a foreign for-profit corporation licensed to do business in Georgia.

6. Safelite operates a Distribution Center at 1350 Braselton Parkway, Braselton, Georgia 30517 in Jackson County, Georgia.

7. At all times material Safelite has conducted business within this District.

8. Safelite may be served with process by delivering a copy of the summons and Complaint to its Registered Agent Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

## ADMINISTRATIVE PREREQUISITES FOR ADA CLAIMS

9. Price timely filed a charge of disability discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").

10. Price files this action within 90 days of his receipt of the EEOC's Notice of Right to Sue.

## STATEMENT OF FACTS

11. Price was born and diagnosed with Russell-Silver syndrome, a growth disorder. His condition substantially limits his daily life activities such as writing and eating, caused his thumbs to be missing a joint and unbendable, and has resulted in significant joint pain and other related serious medical conditions requiring continuing medical treatment.

12. Price worked for Safelite at its Braselton, Georgia Distribution Center ("the DC") for approximately seven years. During that time he was recognized as a high performer. Price's ideas for improving production at the DC were also regularly implemented.

13. Price was routinely recognized at Safelite for his forklift operating skill and productivity, including being sent to compete as the DC representative to Safelite's "forklift rodeo."

14. Although the DC implemented COVID-related layoffs and furloughs during 2020, Price's strong production resulted in Safelite continuing to schedule him to work six days a week in most workweeks in 2020.

15. Price's coworkers and managers at Safelite knew Price suffered from a disability (and/or perceived him as suffering from a disability) and other serious medical conditions. Safelite's DC managers and supervisors knew that Price from time to time needed additional time off for medical treatment and that Price's condition caused unplanned absences, tardiness, and his need to leave shifts early.

16. For example, with respect to tardiness, prior to 2020 DC managers and supervisors did not impose attendance "points" on Price for attendance issues related to his condition, because they were aware that Price struggled with pain management and had occasions when he could not sleep due to pain and would be tardy for his shift.

17. For many years Price's Safelite managers and supervisors accommodated Price's needs caused by his condition, treatment, serious health conditions, and/or related symptoms by informally excusing his absences, tardiness, and/or requests to leave a shift early and not imposing "attendance points." When Price offered to provide doctors' notes for any attendance issues, DC management assured him, doctors' notes were not needed.

18. At no time during Price's employment did any Safelite manager, supervisor, or human resources representative ever advise Price that he had rights under

the FMLA or the ADA, and Price remained unaware of any such rights during his employment.  Although Safelite obtained electronic acknowledgement of an employee handbook from employees, Price did not have a copy of a handbook and was never shown or referred to any company policies regarding the ADA or the FMLA when he spoke with Safelite representatives about his medical needs.

19. Price knew that he earned paid time off ("PTO") days and vacation days each calendar year of his employment, but DC management required that he and other employees provide advance notice of use of paid leave.  In addition, DC management often declined to approve Price's requests to use his paid leave because of the DC's volume of work and Price's high productivity.

20. In 2020 Safelite's DC laid off a number of temporary employees and furloughed other Safelite employees, but Price continued to work and was scheduled for even more work hours than usual.  During most of 2020, there was no human resources representative in the DC, and most other management resources had likewise been eliminated or furloughed.

21. Nicholas Morrill ("Morrill"), the DC shift manager, became Price's direct supervisor upon Morrill's return from furlough in 2020.  Price soon began to

hear from other Safelite employees that Morrill "had it out for" Price and that Price should be careful.

22. Morrill, like other DC supervisors and managers, knew about Price's condition and health issues, and Price told him about his continuing medical treatment, symptoms, the need for time off, pain-related tardiness, and other related circumstances. When Price communicated with Morrill about these issues, Morrill would refer to Price as "buddy," a diminutive condescending and insulting to Price, who is less than five feet tall and weighs about 80 pounds as a result of his growth disorder.

23. Morrill, like other DC managers and supervisors, told Price not to worry when Price told him about his medical needs for time off and/or to arrive late or leave early. Morrill also told Price that texts are "good enough," and Price would show Morrill text confirmations of scheduled medical appointments. However, Morrill was apparently tracking Price's attendance and counting absences or tardiness against Price, even when such occasions were directly related to Price's medical conditions.

24. Morrill then began telling Price that Price could not use his paid time off for "unscheduled" medical needs, that Price could no longer come in late or leave

early even if related to his medical issues, and that Price must schedule his doctors' appointments outside of his work hours.

25. At some point after July 2020, DC management also told Price and other employees that because of business needs, no one could use paid time off for any reason, even if the time off was requested in advance.

26. In August 2020, Morrill issued a "corrective action notice" to Price advising Price that he had 5.5 out of 6 possible attendance points, although Price had never been warned by Morrill and had no knowledge that Morrill was recording his medical-related absences as attendance violations. During their conversation about the notice, Morrill asked Price why Price was not using paid time off for his absences, as though Safelite had not repeatedly denied Price that ability. When Price said he had let Morrill know every time he had been tardy or absent because of his medical needs and "everything" Price "deals with" related to it, Morrill responded that he thought Price "does what he wants to do" and made clear that he was not excusing any of the attendance points he recorded for Price.

27. Shortly before the August 2020 meeting, Price told Morrill, operations manager Andy Scott, and supervisor Kyle Hawkins ("Hawkins") that his doctor had advised him to go on disability leave or look for another position

because of the long hours and physical labor Safelite required.  Price told them he was doing everything he could to take care of himself and continue working for Safelite's benefit.

28. On August 27, 2020, Morrill told Price that he had "pointed out" but that "we'll get with you on Tuesday," September 1, 2020.  Price again tried to explain to Morrill that he had a medical reason for the points Morrill had recorded, and Morrill responded, "everybody's aware of everything."  Price reported to work on Saturday and Sunday, August 28 and 29, 2020.

29. Price reported to work the morning of September 1, 2020 and promptly told Hawkins that he needed to apply for short-term disability based on his doctor's recommendation.  Hawkins initially responded "f--k," but then said he understood Price needed to do what was best for him and take care of himself.

30. After allowing Price to work all but about 15 minutes of his shift on September 1, 2020, Morrill called Price into his office.  Hawkins was also present in the meeting and said nothing about his knowledge that Price told him that same morning that Price needed to apply for short-term disability.  Morrill told Price that his employment was terminated for attendance.  Morrill then told Price, "you should look at this as a blessing in disguise because you can't work here the rest of your life with your disability."

8

31. In response to Price's EEOC charge, Safelite falsely asserted to the Equal Employment Opportunity Commission that the "termination decision was made prior [sic] Mr. Price providing notice to anyone at Safelite of any alleged disability or need for medical time off of work," despite Safelite management's open knowledge of Price's disability and medical needs, its years of accommodations for his medical needs, and Morrill's abrupt refusal to accommodate Price, accept his notice of medical needs, and decision to count attendance points against Price with knowledge that Price's absences or tardiness were related to his disability and serious medical conditions.

32. Safelite further falsely asserted to the Equal Employment Opportunity Commission that "Safelite has no record whatsoever of Mr. Price's purported disability and, Mr. Price never requested leave or an accommodation due to his alleged disability during his employment with Safelite."

33. Morrill falsely told Price that his Safelite benefits coverage ended effective October 1, 2020.

34. Although Price's physician had recommended that he take disability leave, Price was unable to apply for leave when Safelite terminated his employment.

35. During the relevant time period Safelite treated similarly situated non-disabled employees and/or employees without serious health conditions more

favorably than Price.  Safelite allowed those employees to arrive late, leave early, and take time off without recording attendance points for same; allowed those employees to schedule and use paid time off; allowed those employees to use paid time off for unscheduled attendance issues; and did not discipline and/or terminate those employees for purported attendance violations.

## PLAINTIFF'S ADA CLAIMS

### Failure to Accommodate

36. Price reasserts and incorporates by reference paragraphs 1 through 35 of the Complaint by reference.

37. At all relevant times Defendant was Price's "employer" within the meaning of the ADA.

38. At all relevant times Price was an "employee" of Defendant within the meaning of the ADA.

39. Price suffers from multiple serious health conditions that substantially limited one or more major life activities.  Such conditions are a "disability" within the meaning of the ADA.

40. Price has a history of these serious medical conditions, and even when not presently experiencing symptoms related to his growth disorder, he has a record of having this disability.  At all relevant times Defendant knew that

Price suffered from this disability.  In addition, at all relevant times Defendant perceived Price as disabled.

41. At all relevant times Price was qualified for his position at Safelite and could perform the essential functions of his position.

42. Prior to 2020, Defendant was aware of Price's medical issues and informally accommodated Price's disability and serious medical conditions by allowing him to take time off, arrive late, and/or leave early as needed for medical treatment and/or because he was experiencing related symptoms.  Although Safelite had knowledge of Price's disability, related medical issues, and accommodation needs, Safelite and Morrill refused to continue to accommodate Price and deliberately disregarded Price's needs for reasonable accommodation.

43. Rather than engaging in the interactive process the ADA requires, in 2020 Defendant refused to consider or otherwise respond to Price's reasonable accommodation requests, including his request for protected time off related to his medical needs.

44. The accommodations sought by Price (and previously provided by Safelite) would have enabled Price to effectively perform the essential functions of his job, just as he had for years.

45. Alternatively, had Defendant engaged in the interactive process with Price in a good faith effort to accommodate his disability, other reasonable accommodation(s) could have been identified.

46. Without providing Price with the requested accommodations or engaging in good faith in the interactive process required, Defendant decided to discipline Price and then terminate his employment.

47. Defendant failed to make reasonable accommodations for Price's known disability-related limitations in violation of Defendant's obligations under the ADA.

48. Defendant took adverse employment actions against Price based on the need to make reasonable accommodations for his disability in violation of the ADA.

49. Defendant intentionally, with malice and reckless indifference to Price's rights, violated the ADA by taking adverse employment actions against him because of his disability and/or his need for reasonable accommodation.

50. As a direct and proximate result of Defendant's conduct, Price suffered out of pocket losses, at times did not obtain necessary medical treatment because it could not be scheduled "outside" of work hours, and has been deprived of job-related economic benefits, including income in the form of wage and other

job-related benefits, health insurance benefits, and the ability to apply for disability benefits.

51. As a direct and proximate result of Defendant's conduct, Defendant caused, and will continue to cause, Price to suffer damages for physical pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

52. Price is entitled to reinstatement to Defendant's employment, or, if reinstatement is not feasible under the circumstances, Price is entitled to an award of damages for future lost wages and benefits of employment.

**Discriminatory Discipline and Termination under the ADA**

53. Plaintiff reasserts and incorporates paragraphs 1 through 52 of the Complaint by reference.

54. As outlined above, Defendant subjected Price to discipline and/or terminated Price's employment because of his disability.  Defendant's purported "reason" for such adverse treatment of Price is false and a pretext for intentional discrimination.

55. Defendant would not have disciplined or discharged Price had he not had a serious, disabling health condition, been perceived as disabled, and/or had a record of a disability.

56. Defendant intentionally, with malice and reckless indifference to Price's rights, disciplined Price and/or terminated his employment because of his disability and/or treated him differently that non-disabled coworkers with respect to the terms and conditions of his employment, despite Defendant's knowledge that the ADA required equal terms, conditions and privileges of employment for employees with a disability, perceived as disabled, or record of disability.

57. As a direct and proximate result of Defendant's intentional discrimination in violation of the ADA, Price suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, health insurance benefits, and disability benefits.

58. Defendant caused, and will continue to cause, Price to suffer damages for physical pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

59. Price is entitled to reinstatement to Defendant's employment, or, if reinstatement is not feasible under the circumstances, Price is entitled to an award of damages for future lost wages and benefits of employment.

**Retaliation under the ADA**

60. Price reasserts and incorporates paragraphs 1 through 59 of the Complaint by reference.

61. Price requested reasonable accommodation for his disability.   Morrill responded to those requests by repeatedly referring to Price as "buddy" and pretending to acknowledge Price's needs while at the same time recording attendance points for attendance concerns that should have been excused had Price been accommodated.

62. Safelite retaliated against Price by counting known disability-related attendance against Price, rejecting Price's attempts to use paid time off for same, advising Price that his doctor's appointments must be scheduled outside work hours, deliberately disregarding Price's need for accommodation, subjecting Price to discipline, and terminating Price's employment in violation of the company's own professed policies and federal laws. Safelite further treated similarly situated non-disabled employees who had not sought accommodation differently from Price.

63. Defendant denied Price's requests for accommodation and did not engage in the interactive process with him in good faith.  But for Price's requests for

accommodation, he would not have been disciplined and/or his employment would not have been terminated.

64. Defendant's discipline of Price and/or termination of Price's employment were in retaliation for his opposition to Defendant's attempts to pretextually record attendance "points" against him and his requests for reasonable accommodation.

65. Defendant's adverse treatment of Price interfered with his right to receive reasonable accommodation and thus also constituted unlawful retaliation in violation of the ADA.

66. Defendant intentionally, with malice and reckless indifference to Price's rights, subjected Price to adverse treatment in retaliation for his protected exercise of rights under the ADA.

67. As a direct and proximate result of Defendant's intentional retaliation in violation of the ADA, Price suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, health insurance benefits, and disability benefits.

68. Defendant caused, and will continue to cause, Price to suffer damages for physical pain and suffering, emotional distress, mental anguish, loss of

enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

69. Price is entitled to reinstatement to Defendant's employment, or, if reinstatement is not feasible under the circumstances, Price is entitled to an award of damages for future lost wages and benefits of employment.

## FMLA VIOLATIONS – PLAINTIFF'S INTERFERENCE AND RETALIATION CLAIMS AGAINST DEFENDANT

70. Plaintiff reasserts and incorporates paragraphs 1 through 69 of the Complaint by reference.

71. Defendant employed Plaintiff for more than twelve months prior to September 2020.  At all times relevant, Plaintiff worked sufficient hours to qualify for FMLA leave.

72. At all material times, Plaintiff has been an "eligible employee" of Defendant within the meaning of the FMLA.  Defendant employed fifty or more employees within a seventy-five radius of the worksite at which Plaintiff worked during each of at least twenty calendar workweeks in 2020.

73. At all materials times, Defendant has been an "employer" within the meaning of the FMLA.

74. During the relevant time period, Price was entitled to leave, including but not limited to intermittent leave, under the FMLA related to the serious health

conditions from which he suffered.  Rather than allowing Price to use FMLA leave, Defendant subjected Price to adverse actions, including discipline and termination.

75. Safelite failed to inform Price of his protected rights under the FMLA and interfered with, restrained and/or failed to allow Price to take FMLA leave to seek treatment for his serious health conditions despite its knowledge of his need for FMLA leave.

76. Safelite further subjected Price to adverse employment actions due to his attempts to exercise rights protected by the FMLA.  Price was disciplined, subject to disparate terms and conditions of employment as compared to employees who did not suffer from serious health conditions, denied protected leave, disciplined, and eventually terminated.

77. Defendant would not have taken these adverse employment actions had Plaintiff not requested leave that should have been granted and excused from attendance points in accord with the FMLA.

78. Defendant's denial of notice to Price and intentional interference with and/or retaliation for Plaintiff's attempts to exercise FMLA-protected rights resulted in his out of pocket losses, and Price has been deprived of job-related

economic benefits, including income in the form of wages and other job-related benefits, health insurance, and/or disability benefits.

79. Defendant's violation of the FMLA was knowing and willful.  Defendant knew or showed reckless disregard for the fact that its conduct was in violation of the FMLA.

80. Plaintiff is also entitled to reinstatement to Defendant's employment, or, if reinstatement is not feasible under the circumstances, Plaintiff is entitled to an award of damages for future lost wages and benefits of employment.

## **PRAYER FOR RELIEF**

Price seeks judgment on his claims against Defendant and relief as follows:

(a)    Trial by jury as to all issues so triable;

(b)    Judgment for all damages, lost wages, benefits or other expenses which Plaintiff sustained as a result of Defendant's conduct in violation of the FMLA, including an equal amount as liquidated damages;

(d)    Judgment for all damages, lost wages, benefits, expenses, or other compensation Price lost as a result of Defendant's violations of the ADA;

(e)     Judgment for all damages for Price's mental and emotional suffering, other pain and suffering, and out of pocket losses suffered as a result of Defendant's violations of the ADA;

(f)     In the alternative, award(s) of nominal damages under the FMLA and/or ADA;

(g)     Judgment ordering reinstatement of Price or an award of front pay equivalent to the pay and benefits Price would likely have earned were it not for Defendant's unlawful acts;

(h)     Judgment awarding pre-judgment interest on all unpaid wages or other damages from the date such wages were earned and due or such damages were incurred;

(i)      Judgment awarding Price reasonable attorneys' fees and expenses of litigation;

(j)     A permanent injunction enjoining Defendant, its officers, agents, successors, employees, attorneys and those acting in concert with them from engaging in (i) any employment practice or policy which discriminates or retaliates against employees in violation of the ADA, or (2) any employment practice or policy which interferes with rights

protected under the FMLA and/or retaliates against employees in violation of the FMLA; and

(k)   All other relief to which Plaintiffs may be entitled.

Respectfully submitted, this 25th day of June, 2021.

/s/Tracey T. Barbaree
Tracey T. Barbaree
GA Bar No. 036792
Beth A. Moeller
GA Bar No. 100158
MOELLER BARBAREE LLP
1175 Peachtree St. NE
Suite 1850
Atlanta, GA  30361
404.748.9122

*Attorneys for Plaintiff*